# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 22-1022V
UNPUBLISHED

| | |
|---|---|
| RHONDA ANGEROSA,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: July 7, 2025 |

*Elizabeth K. Abramson*, Mctlaw, Washington, DC, for Petitioner.

*Kimberly S. Davey*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On August 19, 2022, Rhonda Angerosa filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza ("flu") vaccine. Petition at 1 (ECF No. 1). The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below, and after holding a "Motions Day" hearing on entitlement and damages, I find that Petitioner is entitled to compensation, and I award damages in the amount of **$165,000.00**, **representing actual pain and suffering, plus**

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**$225.02 for out-of-pocket unreimbursed expenses, and $1,049.63 for lost wages, for a total award of $166,274.65.**

## I.   Procedural History

This case was activated from "pre-assignment review" on February 9, 2023. (ECF No. 23). On December 4, 2023, Respondent filed his Rule 4(c) Report conceding entitlement. (ECF No. 38). Thereafter, the parties attempted to informally resolve the issue of damages, but reached an impasse. Petitioner filed a Motion for Ruling on the Record on May 17, 2024. (ECF No. 51). Respondent filed his Response brief on June 30, 2024. (ECF No. 53). Petitioner filed her Reply brief on July 8, 2024. (ECF No. 54).[3]

On May 30, 2025, I proposed this case for an expedited hearing on June 27, 2025, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. (ECF No. 67). The parties agreed, and the "Motions Day" hearing took place as scheduled. During the hearing, I orally ruled on Petitioner's entitlement to compensation, and then made an oral damages determination. This Decision memorializes those findings and determinations.

## II.   Relevant Factual Evidence

### A. Medical Records

Petitioner was fifty-three years old when she received the flu vaccine in her left arm on October 13, 2021. Petitioner's Exhibit ("Ex.") 13 at 5. On November 18, 2021, thirty-six days after vaccination, petitioner presented to an urgent care provider complaining of pain in her left arm since vaccination. Ex. 3 at 37. Petitioner reported that the vaccination was "somewhat painful with some bleeding but no bruising," and that she "thought that it would go away with some rest and not overexerting the shoulder." *Id.* Petitioner reported that when she tried to gradually increase activity, her pain got worse. *Id.* She denied pain in other areas. *Id.* On exam, petitioner had decreased range of motion and normal strength. *Id.* at 40. An ultrasound and x-ray of the left shoulder were both normal. *Id.* at 45-46. Petitioner was instructed to use ice and heat, avoid strenuous activity, and follow up with orthopedics. *Id.*

On November 23, 2021, Petitioner presented to an orthopedist for "severe" left shoulder pain that started after a flu shot. Ex. 3 at 32. She felt that her arm was "dead weight." *Id.* Her pain had not responded to rest, ice, Tylenol, or topical creams. *Id.* On

---

[3] Petitioner filed two additional motions which are ultimately moot: a Motion for Oral Argument on July 17, 2024 (ECF No. 56), and a second Motion for Ruling on the Record reiterating her prior motion on April 1, 2025 (ECF No. 62).

exam, Petitioner had tenderness and reduced range of motion and strength. *Id.* at 34. The orthopedist felt Petitioner could not participate in physical therapy ("PT") due to severe pain and weakness; she prescribed meloxicam and ordered an MRI. *Id.* at 35.

On December 17, 2021, Petitioner returned to orthopedics to review her MRI, which revealed bursitis and a small full thickness rotator cuff tear. Ex. 3 at 26. On January 27, 2022, she underwent left shoulder arthroscopic surgery. Ex. 5 at 1. At a follow-up on February 4, 2022, Petitioner reported 7/10 pain. Ex. 3 at 8-9. On March 14, 2022, Petitioner began PT; she reported 9/10 pain at night and her range of motion was "very limited." Ex. 6 at 27. By July 6, 2022, when Petitioner returned to orthopedics, she had completed seven PT sessions, was reportedly doing well, and had made progress with her range of motion. Ex. 10 at 24-25.

On August 18, 2022, Petitioner received left shoulder manipulation under anesthesia. Pet. Ex. 11 at 2. On September 13, 2022, Petitioner attended her eleventh PT session and had normal passive range of motion in all directions. Ex. 15 at 15. She was discharged from PT on September 22, 2022, after her thirteenth visit. *Id.* at 7-9. At that time, she was "doing really good" and requested to be discharged. *Id.* at 8. Her range of motion was essentially normal. *Id.* at 8. The additional medical records do not mention shoulder pain.

### B. Witness Statements

Petitioner filed three sworn declarations in support of her claim, although only one of them, executed on May 9, 2024, bears on the issue at hand. Ex. 19. She describes how she felt pain and bleeding immediately upon receiving the flu vaccine. She goes on to describe her limited ROM and "extreme" pain and how it impacted her life – poor sleep, an inability to do as much housework as she would want, unable to go to the gym, and unable to pick up her grandson. She also describes that following surgery, she returned to work as a 5th grade teacher a couple weeks earlier than her doctors advised because her substitute was not doing a good job. She states that "the demands that were placed upon me upon my return were unfair", such as being put on extra committees and asked to do things outside the workday. She interprets this as her work implying she needed to make up the lost time from her surgery and recovery. Finally, she describes her current condition – there are still nights where her arm hurts and if she reaches for something high in the wrong way it can cause temporary pain.

### III.     Compensation to be Awarded

#### A. Parties Arguments

Prior to oral argument, the parties submitted that they had agreed on an amount to be awarded for Petitioner's out-of-pocket unreimbursed expenses and lost wages. Therefore, the only issue of contention remaining concerning damages is for past pain and suffering.

Petitioner seeks $170,000.00, maintaining that her treatment involved multiple doctor's appointments, an MRI, physical therapy, two surgical procedures (a left shoulder arthroscopy and a left shoulder manipulation under anesthesia), and that she still experiences the sequela of her SIRVA injury to this day. Br. at 7-8. She favorably compares the facts and circumstances in her case to those experienced by the petitioners in *Edwards, Rice-Hansen,* and *Wilson,* who received $173,000.00, $175,000.00, and $130,000.00, respectively.[4] *Id.* at 8.

In contrast, Respondent asserts that Petitioner should receive the lesser amount of $90,000.00. Response at 6. Respondent argues that the facts and circumstance more closely resemble, but are less severe, than the circumstances of the petitioner in *Hunt*, in which the petitioner was awarded $95,000.00.[5] *Id.* at 10-11.

In her reply, Petitioner reiterates her belief that her cited cases stand as appropriate comparables, and that Respondent's reliance on *Hunt* is misplaced because "it is the lowest Program award issued via reasoned decision to a petitioner who underwent a surgical intervention, and has routinely been cited by Respondent in SIRVA cases involving a surgical intervention since it was issued." Reply at 16-17.

#### A. Legal Standards for Pain and Suffering Awards

In another decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby

---

[4] *Edwards v. Sec'y of Health & Hum. Servs.,* No. 21-056V, 2023 WL 6847484 (Fed. Cl. Spec. Mstr. Sept. 11, 2023); *Rice-Hansen v. Sec'y of Health & Hum. Servs.,* No. 20-1338V, 2022 WL 18339478 (Fed. Cl. Spec. Mstr. Dec. 2, 2022); *Wilson v. Sec'y of Health & Hum. Servs.,* No. 19-035V, 2021 WL 1530731 (Fed. Cl. Spec. Mstr. Mar. 18, 2021).

[5] *Hunt v. Sec'y of Health & Hum Servs.*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. Jun. 16, 2022).

incorporate my prior discussion in Sections II and III of *Friberg v. Sec'y of Health & Hum. Servs.*, No. 19-1727V, 2022 WL 3152827 (Fed. Cl. Spec. Mstr. July 6, 2022).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[6]

### B. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, signed affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on June 27, 2025. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Pursuant to my oral ruling on June 27, 2024 (which is fully adopted herein), **I find that $165,000.00 represents a fair and appropriate amount of compensation for Petitioner's pain and suffering.**

In making this determination, I have considered relevant facts such as the moderate-to-severe nature of the injury, Petitioner's inability to treat her injury with more conservative measures such as PT prior to surgery due to her pain levels, and the fact that she ultimately underwent two surgical procedures to address her symptoms (an arthroscopic surgery and a manipulation under anesthesia). Prior to her surgery, Petitioner consistently reported pain levels of 5/10 at best and 9/10 at worst. *See, e.g.,* Ex. 3 at 24; Ex. 4 at 26; Ex. 3 at 11-14. These pain levels were severe enough that her treating physicians noted that she would not be a good candidate for conservative

---

[6] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

treatment measures like PT. Ex. 3 at 35. Following her arthroscopic surgery, Petitioner was still reporting pain levels of 6-9/10 when she began her PT program. Ex. 6 at 27. After four months of PT, Petitioner was still reporting 6/10 pain. Ex. 10 at 22. It was only after she underwent a second procedure, a manipulation under anesthesia, that her pain was able to resolve to the point where she did not need any additional medical intervention. I also note that despite the moderate-to-severe nature of her injury, Petitioner was able to recover fairly quickly. After approximately 11 months, Petitioner was discharged from PT with no reported pain and 96.25% functional score in her shoulder (compared to 36.25% when she began). Ex. 15 at 8.

Petitioner's cited cases, particularly *Rice-Hansen* and *Edwards,* provide a good framework for pain and suffering in the instant case. For example, the *Rice-Hansen* petitioner reported pain levels of 5-9/10, underwent an arthroscopic surgery and a manipulation under anesthesia, 40 PT sessions over the course of approximately 26 months. *Rice-Hansen*, 2022 WL 18339478, at *10. This petitioner was ultimately awarded $175,000.00 in pain and suffering damages. *Id.*

The *Edwards* petitioner reported pain levels of 7-9/10, a manipulation under anesthesia, an arthroscopic surgery, and 53 PT sessions over a course of approximately 15 months. *Edwards*, 2023 WL 6847848, at *3. That petitioner was ultimately awarded $173,000.00 in pain and suffering, with the Court finding the case most analogous to *Rice-Hansen* but overall less severe, with Ms. Edwards undergoing more PT sessions but a shorter treatment period. *Id.* The Court also found that Ms. Edwards showed a good prognosis and required no subsequent treatment after her discharge from PT. *Id.*

Compared to the instant case, Ms. Angerosa suffered a less severe injury than either seen in *Rice-Hansen* and *Edwards.* Although she reported similar pain levels, Ms. Angerosa ultimately required fewer PT sessions and the overall course of her treatment was four months shorter than that in *Edwards*, and 15 months shorter than in *Rice-Hansen*, which equates to a shorter period of time enduring for the highest pain levels. While Petitioner has noted that the lesser amount of PT sessions was due to Ms. Angerosa's pain levels being so high that her treating physicians did not think PT would be useful, it also led her to surgery quicker than most petitioners and ultimately helped her recover from her SIRVA in less time than usual.

Respondent's cited case of *Hunt* provides little value as a comparable determination for this category of damages. The *Hunt* petitioner experienced pain levels of 2/10 at best and 8/10 at worst, underwent an arthroscopic surgery, participated in 19 PT sessions, and the duration of her treatment was approximately 15 months. *Hunt*, 2022 WL 2826662, at *8-9. Ultimately, the petitioner was awarded $95,000.00 in large part due to the fact that she benefited from significant reduction in her pain following each cortisone

injection, which resulted in periods of little-to-no pain during the course of her injury. *Id.* at *9. In the instant case, although Ms. Angerosa's treatment duration was less, she consistently reported higher levels of pain and also required a manipulation under anesthesia. Although a manipulation under anesthesia is not as severe as arthroscopic surgery, I have ruled that it is significantly invasive enough as to count as a surgical procedure, and that it deserves more value than other, less-invasive procedures. *Edwards*, 2023 WL 6847484 at *3. Respondent's argument that Ms. Angerosa's treatment was comparable in severity and treatment course, but ultimately deserving of *less* money than was awarded in *Hunt*, has little basis in the facts of either *Hunt* or the instant case. Resp. at 10-11.

Taking into account the record of Petitioner's SIRVA and the comparable cases cited by Petitioner and Respondent, as well as my experience in adjudicating similar cases, I find that $165,000.00 represents a reasonable amount of compensation for Petitioner's actual pain and suffering.

## Conclusion

For all the reasons discussed above and based on consideration of the entire record, **I find that $165,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[7] Additionally, pursuant to the agreement of the parties, I find that $225.02 represents a fair and appropriate amount of compensation for Petitioner's out-of-pocket unreimbursed expenses and that $1,049.63 represents a fair and appropriate amount of compensation for Petitioner's lost wages.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $166,274.65, representing compensation for her actual pain and suffering, out-of-pocket unreimbursed expenses, and lost wages, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.**

---

[7] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.